v. Dept of Public Safety and Corrections at all. We'll hear from Ms. Grodner. Tell me if I pronounced that wrong. Good morning, Your Honors. Donna Grodner on behalf of Toriana Clark. Good morning. Your Honors, I'm going to start talking about principles. Can you move the microphone closer to you? We may not be able to hear you, but it needs to pick up on the recording and everything, so thank you. I'm going to talk about some principles, and I'm going to start with the Edwards v. Balasog case. In that case, a prisoner was charged with a prison disciplinary violation, and he was found guilty in the prison. He went to district court, and he said, well, the procedure she used against me violated my due process, and it made its way to the Supreme Court, and the Supreme Court said, well, but you can't challenge it because your due process challenged because you lost good time. Then we come forward in Louisiana to the Clark case. In the Clark case, in that case, the inmate was charged with a disciplinary violation in a prison. He was found guilty of that disciplinary violation and lost good time. He went to the district court here in New Orleans and said, but the rule they charged me with was unconstitutional. The district court agreed with him and said, yeah, that was unconstitutional. Then it came to this court, and this court said, it may be unconstitutional, but you can't challenge it because of the heck. And so Clark became law of the circuit, and as Your Honor was talking about rules of order, whether we like it or not, you know, it's the law, and there's some dicta in that case that's carried forward that affects the case we're here on today. And that dicta was that prison disciplinary procedures are tantamount to criminal convictions, therefore heck applies to those criminal convictions, provided there's a loss of good time. We come forward to the Bourne case. I think that one was out of Texas. That was the case, I don't know if Your Honors remember it, the inmate was a pro se inmate. He stashed stuff in a feeding tray, and they came in, I think sprayed him down. Then they took him out, and they used some excessive force on him. So he filed suit, and the court said, well, the disciplinary and the loss of good time was limited to the conduct in the cell. And they started with a, we started back in the Bourne case with the strict incompatibility standard. So the case is now that where there is a loss of good time, if the prisoner doesn't have good time, it's just not going to matter. But where there is a loss of good time, they say, well, is your lawsuit that you're bringing for use of force under the Eighth Amendment in 1983, is it strictly incompatible with the findings of the disciplinary board that heard your disciplinary matter? So I had a few cases out of the Middle District that came before the Fifth Circuit, and the court has pretty much locked in. And we're back to rules of order again, where the courts, and these are published opinions just like Clark, like it or not, and those cases say it has to be strict incompatibility. So . . . So we start with strict incompatibility. Do we see this as one incident from the beginning to where they're taking him out into the TV room, or do we parse it more finely than that, and why? Well . . . It doesn't matter. It doesn't matter. You don't think it matters? Because all these cases that you look at, you know, where they're in the shower, then they're in the lobby, then they're, you know, in administrative segregation. I mean, if you want to say those are all one incident, it happens all on the same day. You're only required to file one ARP because it's all continuous incident. You know, like let's go back to Bourne. It started in the cell with him packing his food tray, and then, you know, he was . . . Well, if you're calling this one incident, are you really here to challenge applying HEC in this situation, as opposed to trying to divide up these two incidents? I mean, what's your . . . For you to win, what do we have to find? Well, to win, we have to say what did the disciplinary board that said, you have a loss of good time, what did they base that on? What facts? And are those facts in this petition, this complaint, pled against this defendant? And in this case, there are two disciplinary reports, one from Nichols and one from Wallace, who's our defendant in this case. On the Nichols disciplinary report, which involves the beginning of the incident, there was a loss of good time, and my client, Toriana Clark, pled guilty on those Rule 3 and Rule 5 violations. Are you saying . . . Would you agree that HEC would prevent us from doing anything with that part of the discipline? Under rules of order and the precedence of this court, yes. Do I agree with those cases, Your Honor? I don't. I think there's strong arguments that they're not in compliance with the Supreme Court rulings, but yes. An awful lot of counsel stand where you do and probably disagree with what we've done, but point made. Yes, Your Honor. There's rules of order. So let me ask you about this disciplinary matter. My understanding is the events, whether it's one or two, occurred on one day, and the very next day, this board, as it was called under the documents, met. Your client was there. Is there any transcript, which I understand from the manual, there's supposed to be a recording of the proceedings. Was there any transcript that's in the record of what was done there, how it was done? No, Your Honor, there's not. Do you know if there's a recording that's just not been transcribed? There should be. The rules require that they be recorded, but that I wasn't there and that my client wasn't, you know, in charge of the recording. Is there anything in the record to indicate what we have to call this to is really that we have the two reports that are on a form that then require some ruling by the board on the bottom of that form. So it looks like two decisions. And if we had a transcript, we'd have a better idea of actually how that was handled. Is there anything in the record that would indicate whether there was one presentation and the board then just signed off on the two documents and punished for one explanation from Wallace, punished for the explanation from Nichols? And that's the O'Quinn case that is also published opinion where this court said... No, you're getting into precedence. I'm asking you what happened at this hearing. Oh, it's the same as O'Quinn. You can't tell, you know, based on... There's nothing in the record to say how this proceeded at the hearing. Right, you don't know what facts the board actually looked at in the Nichols report and said, hey, we're going to take... It's just a short report, it's one paragraph. Is there any explanation as to why your client pled to one and there's no evidence of what he did as to the other? Well, there's no evidence that he pled to the other and he hasn't said he pled to the other and the only person he sued is Wallace on the other where they had the extreme use of force. If you look at the videos, Judge Southwick, that's really not a case, the first disciplinary report. There's just not enough... There's nothing, not really any injuries. I mean, there was some force used and maybe it was a little disproportional, but there really aren't any injuries until the defendant in this case, Lance Wallace, comes bounding into the room, runs over and starts with the... And that's a completely separate report and on that specific report, there's no loss of good time. So if we're going to use the rules of order, there's nothing precluded by this court's precedents and, in fact, this court's precedents support our position that there's no indication under the strict incompatibility that my client pursuing his claims against Lance Wallace for busting his face, nearly breaking his leg, bruising him, choking him, is precluded by any precedents of this court. And, in fact, we believe that the precedents of this court, which, sadly, many of them are mine, that I wish we'd have gotten more relief, say that there has to be strict incompatibility. So I'm just asking this court to apply rules of order like y'all did with the Clark case, to apply rules of order here and say those cases require a certain finding in this case. Well, I have a question...  ...about the UORs. Yes. OK. Was he also pleading guilty to the facts contained in the UORs? Because usually they're included in the report. They're not. It's not clear to me whether it's included in the Nichols report or not because they're supposed... They said they were attached as a supplement record on Appeal 301. Right, they said that in their brief. That's what they said in their brief. Yeah, I'm trying to... There's no evidence of that in the record. There's no evidence that the disciplinary board reviewed any of the warden's unusual occurrence reports. Now, they found a procedural thing that says, well, they're supposed to. But... You don't know that they did that in this case? No. That's an ambiguity under Gray. Well, it's not ambiguity, it's unsupported fact, Your Honor. And as a matter of fact, in all the disciplinary proceedings I've seen, they've never used UORs. But they found a provision in the rule that says, well, you're supposed to. But there's absolutely no evidence in this record that they did, that they went... So we have to assume either that the disciplinary board relied only on the facts written in the Nichols report or else it's ambiguous as to whether it also looked at the Wallace report and you win either way, is what you're saying? We do. But I would have to disagree that there's any ambiguity because there's no indication from either of those disciplinary... Even if it was ambiguous, you would win. Right. Under Gray. Under Gray, under Oquin, under Bourne, under Santos. But what if we see the Nichols report is talking about everything that happened? That would be wrong? Well, if you look at the Nichols report, and I know I've repeated this, it says that as soon as I commanded him a couple of times to stop resisting and he came into compliance and there was no longer any resistance. And you can see on the video when he got up and when he says he did. So that's a very short period of time. It's into four minutes into the beginning of the video which shows the young man walking in in the first place. So even in that report, there's no indication that it goes any farther than when the last thing he writes is that he stopped resisting. Can we talk about qualified immunity for a minute? Because that's in the briefing. It is. And so the district court didn't pursue that yet. Is that right? Right. We went in and there was a defense filed of heck. And so we had a status with the judge and we said, well, what about this heck? Let's bring this forward. And both parties at that time and the state did in their footnotes said we need to look at qualified immunity also and we believe that this court's precedents require the district courts to look at qualified immunity up front because it's supposed to prevent discovery and unnecessary procedures and streamline. And the judge just wanted to look at the heck issue and not at the qualified immunity. And we felt that. Thank you, Your Honor. No, no, no. You're not done. You're yellow. You're yellow. You have two more minutes. Oh, thank you, Your Honor. And I've got a couple questions about that. All right. So would the correct thing be if you, and I'm not foreshadowing. Please don't misunderstand me. If you were to prevail on Nichols' report doesn't include Wallace's report and therefore your claims on the Wallace report can continue, or else it's ambiguous whether it concluded, so therefore your claims against Wallace can continue, either of those arguments. Then would the next thing be for us to remand and direct or request, whatever the nice term would be, to consider qualified immunity based upon your claims under the Wallace report, the Wallace case? I think procedurally that's the only way that it could go. So that's what should happen is it should be, we should ask the district court to please focus on qualified immunity and whether it applies next. And then we might be right back up here, and that was the judicial economy efficiency argument that both parties were. Right, but that's not. Water under the bridge, as they say. It is. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Tim Wynn. I'm an Assistant Attorney General for Appellees, Lance Wallace. Can you keep your voice up and bring the microphone as close to you as possible, please, Mr. Wynn? Sure. Again, I'm Tim Wynn for Appellees, Lance Wallace. And Warren Travis Day, this Court should affirm the summary judgment dismissing Toriana Clark's claims as heck barred. I'm only going to focus on the heck issue rather than the amendment and qualified immunity issue unless you'd like me to address it directly. So Clark's claims are heck barred because they imply that his convictions are, his disciplinary convictions are invalid. And so he has no Section 1983 claim. I just want to point out that the overall test is whether the success of his Section 1983 claim would require negation of an element of his criminal offense or would require proof of a fact that is inherently inconsistent with the conviction. He claims excessive force under the Eighth Amendment. And so the Court looks at whether force was applied in a good faith manner to restore order or discipline rather than maliciously or sadistically with the intent to cause harm. A plaintiff can't bring a Section 1983 claim if the inmate was found guilty of conduct that warranted the use of force. And in the de Leon case, this Court said that an excessive force claim is barred where the complaint maintains that the plaintiff did nothing wrong before the use of force was applied. And that's even if the plaintiff argues that his conviction would not be invalidated by proving that excessive force was used well after the need for it had ceased. And that's exactly what we had in this case, and we didn't hear anything about that in the briefs from Mr. Clark or in the argument to this Court just now. The petition asserts that force was used for no reason after he was simply asking for medical attention. So he claims that force was used unnecessarily and not in a good faith manner to maintain order. So he denies that his conduct provoked force. If you read his petition, there's not much in there about his conduct other than his asking for medical attention. He never says that he was resisting. He never says that he was acting unruly. He denies any of that. Yet he pled guilty to defiance and aggravated disobedience and lost 120 days, four months total. I don't think he's disputing that. He's not disputing the Nichols report at this point. Right, no. Maybe he needs to reamend his petition to clarify, but he's not disputing the Nichols report. Right, I understand that. But, again, under the de Leon case, I mean, that was 12D6, but the complaint alleged what it alleged, and there was no attempt to proffer an amended complaint here. Was that a situation where things occurred with an additional person who came in and did the allegedly excessive force activity? I mean. Did that happen in Leo de Leon? Because here the situation is that the entrance of Officer Wallace, Deputy Wallace, whatever the correct name. I'm not trying to be disrespectful to Mr. Wallace. What should I call him, Deputy or? I think it's Lieutenant. Lieutenant Wallace. So here there's a thing that at that point is when it started, and that's the allegation here at this point going forward. Right. If you look at the petition on paragraph 12, the one paragraph that focuses on Lieutenant Wallace itself, it says ranking officers, this is after everything had started and they were tussling with him, he says, ranking officers then appeared to assist with escorting Toriana Clark out of the dorm. When Toriana Clark's, I guess, legs gave way, one of the officers threw him on a bed. At that point, Lieutenant Wallace then started twisting his ankle. Lieutenant Wallace then began choking Toriana Clark, who was in full restraints, had an injured ankle and who was unable to defend himself. So even in that allegation itself, he's still saying that he was doing nothing wrong, even as to Lieutenant Wallace. At that point, because he was subdued. That's what I understand opposing counsel to be saying, that they're pleading that he's subdued. And so there was no need for the alleged excessive force by Lieutenant Wallace at that point. Right. Well, that might be what Toriana Clark is arguing, but that's not what the petition says. The petition says that he was asking for medical attention where he was attacked for no reason. And then Lieutenant Wallace joined in and twisted his ankle. So are you saying if a complaint is mixed and contains some actionable conduct and some unactionable conduct post-act, that we throw the whole thing out, even if there is some actionable conduct that would be allowed without a health bar? You don't just parse the complaint to say, well, this claim, to the extent you're saying at this point, that's Nichols takes care of that, it's Heckbard. But over here, it's not Heckbard. And that can continue. And what about Gray? What do you do with that? The Gray case. The Gray case? Yeah. Well, the Gray case, I think, was just the issue was just whether or not there was a genuine issue of material fact regarding the evidence that was in the record. And whether or not it wasn't clear from the Gray opinion whether, like the Santos opinion, the elements of the charges were in the record. I wasn't totally clear on that from the Gray opinion. But it certainly seemed like that might have been the case. But the court was essentially saying that there were all these different disciplinary reports and charges. But again, in that case, there were three separate incidents, so to speak. It wasn't one continuous violent encounter, and neither was the claim alleged that way, unlike the claim that was alleged in the de Leon case. In Gray, the allegation was, let's see. But he didn't even sue Nichols. So it's clear that he's not claiming against Nichols. Well, I don't think that. So that's the problem. If it's the Nichols report and he's not suing him, he's only suing Wallace, who wasn't even there at the time the incident started. He comes in. He marches in well into the situation when there are already three or four people subduing or trying to subdue, depending on your point of view. Mr. What's his name? Mr. The plaintiff. Mr. Clark. Clark, thank you. Well, first of all, I think from what I recall from the briefs, I think that Clark admits that Wallace was there before he was subdued. And even if you go by the sort of play-by-play and plaintiff's brief of the video, in the comparison to the Nichols report, the leg-twisting incident, for example, was before Nichols says that all use of force ceased. And Nichols was, of course, I mean, he was there. The video shows that he was there. He was able to see everything that was happening. And the fact that he didn't detail every little thing that occurred, I mean, that's not a surprise. And, you know, that makes sense. That's why the UOR reports are part of the disciplinary report. But that's the problem is that here there's no evidence that they are actually part of this disciplinary report in this case. There's no, you haven't produced anything in the record to indicate that they are. The record doesn't reflect that. Well, I think the prison regulation sort of states it. It says it should happen, but lots of things are in regulations of all different kinds of organizations. I'm not picking on prisons. That are the regulations that didn't factually happen in a particular occasion. And so it's very important which of those reports are included if they're attached to Nichols or not. That's why we talked about it before. And here there's no evidence in the record that they were attached. Well, other than the fact that they were written. Other than the fact what? Other than the fact that they were completed. But they could be attached to the one, to the other report. And we don't know that they were attached to either report. I think if we kind of back up a little bit and remember this is a motion for summary judgment. So in the De Leon case, for example, in the Oakland case, the OUCIN case, those were 12B6 motions. And in those cases, the court was considering the complaint, obviously, and the disciplinary reports as the opinions revealed. So if we take that, theoretically, we could supply the complaint, the disciplinary reports, and we've met our burden on summary judgment because this case, the petition, is just like the other cases, again, where the plaintiff alleges he did nothing wrong to provoke the use of force, including Lieutenant Wallace's use of force. He is a defendant. Yet he pled guilty to conduct that warranted the use of force. So then the burden shifts. We're saying that as to the Nichols facts before Wallace arrived. That would be the summary judgment point. And I don't think they would actually disagree that you're entitled to summary judgment on all the Nichols report. Every bit of that is heck barred. Claims against Lieutenant Wallace? If there's anything in the Nichols report that applies to Lieutenant Wallace, then you win on those. Anything in the Nichols report that applies to Lieutenant Wallace? Well, the Nichols report just. I mean, I think that's what their argument is. I'm going to ask your friend on the other side that. But I think that they're saying anything that's covered by Nichols, you win on. But only that which is clearly covered by Nichols do you win on. Anything ambiguous, you don't win on. And anything that's covered, you do win on. I don't mean for you to have to look something up. Your time is, you can. I was just trying to refresh myself on exactly what the Nichols report. OK, I'm sorry. You're welcome to do with your time as you wish. I just don't want to. I want to make sure you have a chance to argue. Let me ask you about this. It seems to me my question imposing counsel whether there's a recording. Maybe, maybe not. Whether there's a transcript. Apparently not. Is it clear there's no transcript of what happened at the board hearing? There's no transcript in the record. Is there a recording? Not in the record. What I'm getting to, it seems to me that to the extent there's an overlap between the Nichols and the Wallace report factual allegations. He's already been punished by what was done, including loss of good time credits, as to whatever was in the Nichols report. Some of which overlapped Wallace. Could he be punished again for the overlap in the punishment that he got for Wallace? Is there anything about the procedures that would allow the board to do that? I didn't see it in the field manual one way, the manual for this one way or the other. I believe that there's a maximum amount of... Right, but when you say maximum amount, he got a loss of good time credits and then he had whatever it is under the Wallace report, the collection of discipline there. If this whole thing was basically one hearing, but they had to make two rulings because the rulings are put on the reports from Nichols and Wallace, there may be one way to look at this. There's only one ruling, collectively. But we don't know enough about that hearing, it seems to me, even to go down that road to know if that's what the board was doing. Another way to look at this is that everything that was in the Nichols report was taken care of by Nichols. There's no heck bar to what was done to the Wallace because of the nature of the punishment there, discipline there, and they can proceed on that basis because the state itself decided to treat this as two different incidents with two different reports and two different punishments. Help me with where you think I went wrong, probably. So what exactly is the question? I'm sorry. Well, that is two different decisions, two different discipline matters, totally separate because the state treated it that way, and so therefore they can proceed under the Wallace report because there's no heck bar to it because of the nature of the punishment there. You're asking that if they were to, if the state considered each report separate incidents? Well, from the looks of the paperwork, they treated them as separate matters to punish separately. Right, but again, I can only come back to the complaint or the petition here. Now, I know that the Nichols report doesn't specifically mention Wallace. However, he still claims, and again, I'll go back to the overall heck test. Heck bars claims whose success require negation of an element of the criminal offense, and that's not exactly what we're talking about here, or that require proof of a fact that is inherently inconsistent with his conviction. So he alleged that he was doing absolutely nothing wrong. So if he proves those facts here, he doesn't allege that he was acting up and that force was used against him legitimately, and then Wallace exceeded what was appropriate there. Again, that was the case in De Leon. Counsel, let me stop you. The thing you're not, maybe you're considering it, but I'm not hearing it. My reason for making that separation is, such language has, heck is not implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence. And so, therefore, the discipline that he got under the Wallace report arguably does not raise a heck issue. Well, but his claim challenges his discipline under the Nichols report. Right, and so if it's two different incidents because the state considered it two different incidents by the nature of the handling of it at the board, then we can separate it. Well, I don't think that there's any evidence in the record that suggests definitively that the state considered it two separate incidents. Well, two separate documents, two separate punishment under each separate document. If there's ambiguity, I'm not sure you win. Well, I think we would be speculating, and speculation isn't sufficient to create a genuine issue of material fact. What's speculative about the fact you have two, I mean, these were orders of a court. It looks like two separate orders. Two separate rulings, two separate punishments. And one's affected by heck, and the other is not. You may not have seen the question mark, but that's a proposal on how to interpret all this.  I guess what I'm trying to say is, and I'm just sticking to my guns on this, I guess, is that whether the Wallace report even was separate punishments, I mean, it's separate punishments for the same incident, I think. I mean, if you compare it to what happened on the video, it's clearly one incident. I mean, there's no denying that. There's nothing, I believe, that prevents multiple officers from doing disciplinary reports for the same incident. The fact that he lost good time credit for the Nichols report and didn't for the Wallace report, I don't think that that eliminates the underlying claim here that he alleged in his petition. And his petition alleges that he did nothing wrong to warrant the use of force by anybody, Wallace included, Nichols included, everyone. And the fact that he's suing Wallace, that he cherry-picked a defendant, one of five or six, seven guards, just to attempt to evade the heck bar, it seems, to argue that, well, you know, again, he would have to prove a fact in his petition that I was doing nothing wrong. I was doing nothing wrong. I was asking for medical attention. If he proves that fact, that contradicts what he pled guilty to. He pled guilty to in the Nichols report. I don't think he's trying to prove that fact, and we're at summary judgment. He's not trying to prove that he did nothing wrong. He's conceding that he did the things wrong that he pled to. That's where we're in an impasse, I think. I see that I might have messed up. No, please answer that. If you have anything that would help us, we would really appreciate it. Could you repeat the question? I'm sorry. I don't believe that he is standing here today trying to say that he did nothing wrong. He is conceding the misbehavior that he pled to in the Nichols, in the final discipline report on that, in which he's received punishment for. He's not challenging that. He's conceding that. And we are on summary judgment, and we're trying to decide whether we should affirm a summary judgment, and we're also trying to decide whether it was really futile to not allow an amendment, given the videos and everything. So could you have anything further that you'd like to say? First, I don't necessarily believe that he's conceded that he did nothing wrong. For example, on page 13 of his brief, he states, this is a quote, Mr. Wallace incorrectly stated that Clark's lawsuit is about a complaint for medical attention, when actually that is how the encounter began. So that sounds to me like he's still going to claim that he was seeking medical attention, and he was attacked for no reason. He did not . . . This court has required plaintiffs to proffer a proposed complaint, or suggest specific facts that they would amend the complaint in order to allow amendment. There was nothing like that. There was no affidavit, no declaration, no proffered complaint. The only thing that we got from Mr. Clark about how he would amend his complaint was to say that he would allege more or less facts. And that's completely vague. And we're talking about whether the district court abused its discretion in terms of not allowing an amendment whenever there was no attempt to even explain what the amendment would be. I don't think there was an abuse of discretion there at all. Okay, thank you. We have your argument. You've saved time for rebuttal. You need to pull that microphone down again. There were some background facts that were alleged, like the video starts with the young man, the young officer, walking in, Kimball, and him walking by, and my guy's on a bed, and he says he's complaining about a medical problem. And that's all that those first couple of paragraphs are talking about. This is what happened, and then it led over here, and then it focuses on what Lance Wallace did, who's no longer employed. Are you saying that your client did nothing wrong . . . As to Lance Wallace. As to the whole beginning of the . . . No. No, I'm not, Your Honor. He pled guilty. But I did want to bring up one fact under . . . What do you want this court to do? I would like to reverse and remand with an order that the court go ahead and hear the qualified immunity issue and let the briefs fly on that. I just wanted to bring up one little point on the DeLeon case that they keep pounding, pounding. That's a Fourth Amendment case. It involved a shooting, a stop. The guy's family was there. The guy tried to bear hug a police officer. It's not even in a prison setting. I'm not sure that has much rules of order value, but I just wanted to bring that forward that it's completely distinguishable. Yes, Judge Southley? I'm just affirming your argument. Oh, yes, sir. Yes, sir. Thank you all very much for your time. Thank you. We've heard the arguments which we find helpful. This case is submitted. Thank you, Your Honor.